[No. B017257. Second Dist., Div. Five. Nov. 3, 1988.]

In re DONALD S., A Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent, v.
DONALD S., Defendant and Appellant.

**COUNSEL**

Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Sterling Honea and Joe Ben Hudgens, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

LUCAS, P. J.—Donald S. appeals from an order of the juvenile court terminating his dependency status.

### FACTS

Donald S. was born in 1972, abandoned at birth by his mother, and placed in foster homes until his adoption in 1979. From April 1982 to October 1982, the minor was a dependent child of the court based on allegations of physical abuse by his adoptive parents.

In April 1983, a new petition was filed in juvenile court alleging physical abuse of the minor by his adoptive parents under Welfare and Institutions Code section 300, subdivisions (a) and (d).[1] In a statement to the Department of Children's Services (DCS) worker, the adoptive parents indicated they were unable to cope with the minor's behavior problems and wished to have the adoption set aside. The worker recommended the child be removed from his parents' home and placed in a group home. She also recommended ongoing therapy to assist the minor in overcoming his emotional and psychological problems. This recommendation was approved by the juvenile court on May 25, 1983.

On February 20, 1985, the housemother at Westside Youth Home prepared a report indicating that Donald S. had admitted trying to kill her by placing "TSP" cleaner in her coffee pot and cleanser in the sugar bowl. The report indicated the minor had been involved in other incidents of misconduct and malice. That night, sheriffs questioned the housemother and the child. The following day, the minor was arrested and detained by the Los Angeles Sheriff's Department, charged with assault with a deadly weapon, and transferred to juvenile hall. He was committed to the California Youth Authority (CYA) as a delinquent youth. (§ 602.)

In May 1985, the DCS filed a report seeking to terminate jurisdiction in this matter and have the case turned over to the probation department. The basis for the petition was the assault incident against the housemother and the fact that the minor is a ward under section 602 who is currently living at the youth authority in Norwalk.

At hearing regarding termination of dependency jurisdiction, counsel for the minor asked that the child's dependency status be continued, despite his concurrent status as a delinquency ward under section 602. The court considered the request, but felt it had no authority to permit

---

[1] Unless otherwise indicated all statutory references are to the Welfare and Institutions Code.

concurrent jurisdiction of a child as a dependent under section 300 and a delinquent under section 602. The court ordered termination of dependency jurisdiction and the minor appeals.

## DISCUSSION

█ The jurisdiction of the juvenile court involves three categories of children: section 300 (formerly § 600) covers dependent children, victims of cruelty, abuse, neglect or depravity; section 601 covers status offenders, children who are habitually disobedient or truant; and section 602 covers delinquents, underage law violators.

When a finding is made that a minor adjudged a dependent child under section 300 must be removed from the home, section 362 lists the options for placement that a court may consider. When a minor is adjudged a ward of the court under section 601 or 602, section 727 lists the same placement options for the juvenile court. However, section 730 provides that when a minor is adjudged a ward of the court under section 602, in addition to the placements available under section 727, the court may also commit the minor to a juvenile home, ranch, camp, forestry camp or juvenile hall. Section 731 authorizes commitment of a section 602 ward to the CYA. (See Cal. Rules of Court, rule 1372.) Thus, all dispositions available for a section 300 dependent child are also available for a 601 status offender or 602 delinquent.[2] However, a 602 delinquent child is also subject to more restrictive placements, a circumstance consistent with the criminal conduct which brings the minor before the court. (*In re Gladys R.* (1970) 1 Cal.3d 855, 864-865 [83 Cal.Rptr. 671, 464 P.2d 127].)

The reality is that a child may be adjudged a dependent child and removed from his parents' home, subsequently engage in conduct which causes him to be adjudicated a status offender, and in a deteriorating set of circumstances, finally commit a crime, which provides the basis for his adjudication as a delinquent child. (See *In re Ronald S.* (1977) 69 Cal.App.3d 866, 871 [138 Cal.Rptr. 387].) In such a scenario, the child passes from the category of dependent (§ 300) to status offender (§ 601) to delinquent (§ 602). At each stage, the juvenile court must ascertain the appropriate placement for the child, meeting all the needs of the dependent child for custody, care and guidance, and for the status offender also providing necessary discipline and control. (§ 202.) For the delinquent the placement choice must serve those needs as well as the additional goals of protecting the public from the conduct of the minor and rehabilitating the minor. (§ 1700; *In re Brian S.* (1982) 130 Cal.App.3d 523, 528, 529 [181 Cal.Rptr. 778].)

---

[2] However, section 206 requires segregating facilities for dependent children from those for status offenders and delinquents.

Thus, as a practical matter, a child who makes his unfortunate way up the ladder from dependent to status offender to delinquent, or as in our case, from dependent to delinquent, will automatically have the needs of his earlier designation cared for within the context of his subsequent designation and placement. In our case, the same basic needs of food, shelter, medical care, safety and behavior control underlying appellant's need for out of home placement under section 300 will also be met during his commitment to the youth authority under section 602. Extensive regulation of those necessary services can be found in California Code of Regulations, title 15, section 4600 et seq. Moreover, either as a dependent child or as a CYA ward, he will receive periodic case review. (§§ 365, 366, 1720).

We find no indication either in the governing statutes or in the case law that the Legislature intended to provide duplicative services to minors who were initially dependent children and were later adjudicated delinquent children and committed to the youth authority. Instead, it appears from our examination of the statutory scheme that the Legislature intended the juvenile court, upon petition, to adjudicate whether a minor was a proper subject under any one of the three categories. This intent is evidenced by language in several sections regarding proceedings to determine if a minor is an individual within the provisions of "Section 300, 601, *or* 602." (§§ 653, 701, 702, italics added.) This clearly contradicts an interpretation allowing a minor to be designated a person within the provisions of both section 300 and section 602. Allowing continuation of appellant's dependency status while he is also a delinquent child in CYA placement would present just that situation.

Allowing dual dependency and delinquency status also presents the possibility of conflict based on dual "jurisdiction" over the custody and welfare of the minor child by both the DCS and the CYA. The CYA, with its broader goals of correction and rehabilitation (§ 1700), requires a great deal of discretion in its supervision and continuing determination of the needs of its wards. This delegation of authority has even been held to limit the authority of the juvenile court to set aside a CYA commitment order when the court's view of the ward's rehabilitative progress and continuing needs differed from that of the CYA. (See *In re Owen E.* (1979) 23 Cal.3d 398, 405 [154 Cal.Rptr. 204, 592 P.2d 720].) The risk of interagency conflict between the DCS and the CYA dictates against continuing appellant's dependency status after his commitment to CYA.

Appellant's counsel argued at the hearing that dual status was necessary so that appellant would have an outside person to monitor his condition during his commitment to CYA. A review of the administrative regulations regarding CYA commitment reveals ample grievance procedures for the minor to seek resolution of problems on his own behalf without the need for

either parent, guardian or other adult to act on his behalf. (Cal. Code Regs., tit. 15, §§ 4085-4107.) Wards must be given full instruction regarding the availability of these procedures (Cal. Code Regs., tit. 15, § 4089), and are entitled to representation by an employee, another ward or a participating volunteer. (Cal. Code Regs., tit. 15, § 4090.) The regulations also provide that a ward may not be denied or obstructed in any effort to present a petition or legal document to the court, and staff is required to assist the ward as much as possible through the process. (Cal. Code Regs., tit. 15, § 4131.) Moreover, wards are to be provided with summaries, in understandable terms, of new court decisions which may affect their rights. (Cal. Code Regs., tit. 15, § 4132.) CYA commitment, without concurrent dependency status, does not deprive appellant of the means of complaint, review or access to the courts.

The juvenile court may terminate the dependency status of a child based on a change of circumstance if such termination is in the best interests of the child. (§ 778.) Inasmuch as the juvenile court has found sufficient basis to declare appellant to be a delinquent child under section 602 and to commit him to the youth authority, we find support for the conclusion that it is in his best interest to receive care, treatment and rehabilitation solely as a ward of the youth authority under section 602. The court therefore did not err in terminating his dependency status.

### DISPOSITION

The order is affirmed.

Boren, J., and Kennard, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 18, 1989.