Filed 2/6/14  In re Alisha A. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ALISHA A., a Person Coming Under the Juvenile Court Law. | B246561 <br><br> (Los Angeles County <br> Super. Ct. No. FJ51041) |
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALISHA A., <br><br> Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cynthia Loo, Juvenile Court Referee.  Affirmed.

Torres & Torres and Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Lance E. Winters, Assistant Attorneys General, and Victoria B. Wilson, Deputy Attorney General, for Plaintiff and Respondent.

Minor and appellant Alisha A. (minor) appeals from a judgment of the juvenile court entered after the court sustained a petition filed pursuant to Welfare and Institutions Code section 602[1] (petition or section 602 petition). Minor contends that the juvenile court erred in failing to determine whether she would be better served in dependency proceedings under section 300, or by remaining in delinquency proceedings under section 602. Minor also contends that the juvenile court erred in denying her motion to exclude evidence on the ground that she was a victim of human trafficking. Finding no merit in minor's contentions, we affirm the judgment.

## BACKGROUND

The section 602 petition alleged that minor had solicited another to engage in prostitution, in violation of Penal Code section 647, subdivision (b), a misdemeanor. Minor denied the allegation and filed a preadjudication motion to exclude evidence relating to the solicitation allegation under Evidence Code section 1161, on the ground that she was a victim of human trafficking.

Prior to the hearing a probation report was filed informing the juvenile court that minor was a runaway from an Arizona group home for prostitutes, her mother and sisters lived in Arizona, and she had no family in California. The probation officer contacted the child protective services agency in Maricopa County, Arizona, and learned that in November 2012 minor had been made a ward of the court there, "because the mother 'refused to parent her.'"

Minor's testimony during the evidentiary hearing on the motion was limited to the issue of whether she had been a victim of human trafficking. She testified that she was 17 years old and that "Tootie" was her pimp. Tootie required her to work for him, told her what to do, and threatened to hit her if she did not comply. He hit her hard on the right cheek the day she was arrested, but left no visible marks or swelling. Minor testified that prior to her arrest Tootie would tell her where to stand and what to do, and he took any money she earned. In exchange, he provided her with a place to live, but

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

gave her no money.  Tootie would drop minor off at the chosen location and watch her from his car, a late-model black Infiniti.

Minor testified she met Tootie soon after she arrived in California, having been introduced to him by her friend Champaign, with whom she had voluntarily absconded from her Arizona group home.  Minor did not know Tootie's real name or his age, but she described him as dark-complected, six-foot one-inch tall, with dimples and some tattoos.  Tootie lived rent free with his aunt in her house and minor lived with them.  No one else lived there.  Minor did not know the address or where the house was located, but claimed it was about an hour's drive from Los Angeles.  During the two months minor lived with Tootie she gave him all her money and he paid for her food, clothing, and cell phone.  Minor did not consider Tootie to be her boyfriend.

Minor claimed she was not free to leave Tootie's house because he was always with her and would beat her if she tried.  He never left her alone and always took her with him whenever he left the house.  Minor also testified that she did not consider herself to be Tootie's captive, she never tried to contact the police or anyone else for help, and it did not occur to her to ask Tootie's aunt for help.  Minor's friend Champaign disappeared after introducing minor to Tootie.  Thereafter her cell phone became inactive.  Minor had no contact number for her mother or other family members.

Minor had Tootie's telephone number in her cell phone when she was arrested and could have contacted him.  Instead she did not give this information to the police or mention that she had a pimp.  Minor saw no point in telling the police anything because she knew she would just be returned to Arizona, which was all she wanted.  This was her second AWOL from her group home -- she returned voluntarily the first time.  Minor left simply because she wanted to get out of Arizona.

The adjudication hearing was conducted prior to a ruling on the motion. Los Angeles Police Officer Steven Torres testified that while working undercover with a vice team on January 5, 2013, he observed minor standing on a street corner at 2:30 a.m., looking in various directions in the manner commonly used by prostitutes to look for a lone male motorist or pedestrian.  Officer Torres approached minor, invited her into the

3

car, and struck up a conversation with her.  He said he was looking for a "good time" and asked what she was "good at."  Minor replied she had a tongue ring and was "good at giving oral" which was a common phrase for oral copulation.  Officer Torres replied "Okay" or "Good" and asked what he needed to get that.  Minor said $100 and he verified the offer with, "So $100 for oral?"  When she said yes, Officer Torres signaled uniformed officers who then arrested minor.

The juvenile court denied the preadjudication motion, finding that minor had not met her burden to produce sufficient evidence to support a finding she was a victim of human trafficking.  The juvenile court then sustained the 602 petition.  On the same day, the juvenile court considered a petition pursuant to the Interstate Compact on Juveniles, Welfare and Institutions Code section 1400 (section 1400 petition) which had been filed on behalf of child protective services in Maricopa County, Arizona, seeking return of the minor to its jurisdiction.  After minor signed a voluntary return consent form, and finding it was in minor's best interest to be returned to Arizona, the juvenile court granted the section 1400 petition, ordered minor to be returned to Arizona, calendared a nonappearance review for the following month, and without entering a disposition, indicated that it would dismiss the section 602 petition upon verification that minor had been transported to Arizona.

The next day the juvenile court reconsidered its order and entered a disposition. The court placed minor on probation under specific terms and conditions, but without the supervision of the probation department, pursuant to section 727, subdivision (a).  The court noted it would consider dismissing the section 602 petition in the future, upon verification that minor had arrived in Arizona and was "doing well" in the Arizona program.  Minor filed a timely notice of appeal.

**DISCUSSION**

## I.  Section 241.1 report

Minor contends that the juvenile court was required to obtain a joint report as described in section 241.1, subdivision (a), and to make a determination whether she

4

would be better served under section 300 dependency proceedings or in delinquency proceedings. Section 241.1, subdivision (a), provides:

> "Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor."[2]

Minor argues because she was a ward of the court in Arizona due to parental neglect, and since neglect is a basis for dependency jurisdiction, she "appears to come within the description of both Section 300 and Section . . . 602." She concludes that because the juvenile court failed to obtain the joint report and make that determination, the judgment must be reversed.

We find no merit in minor's argument. There was no reason to prepare a section 241.1 report in this case. "In California, the juvenile court's jurisdiction over a minor can be invoked in two ways: (1) by a dependency petition (§ 300), which alleges the child's home is unfit due to parental abuse or neglect; or (2) by a delinquency petition, which accuses the child of either disobedience or truancy (§ 601) or the violation of a law that defines a crime (§ 602)." (*In re W.B.* (2012) 55 Cal.4th 30, 42.) "In the broadest sense, adjudications under section 300 are 'dependency' proceedings, and adjudications under sections 601 and 602 are 'delinquency' proceedings." (*Id.* at p. 43.)

In general, California law prohibits a minor from simultaneously being declared both a dependent child and a delinquent ward. (*In re W.B., supra*, 55 Cal.4th at p. 46; *In re Marcus G.* (1999) 73 Cal.App.4th 1008, 1012.) "Section 241.1, subdivisions (a)

---

**2** Minor does not state which child welfare services department should be a coparticipant in the joint report, the Los Angeles County Department of Children and Family Services or an equivalent agency in Arizona. As respondent points out, minor has cited no authority that would require an Arizona agency to comply with the statutory directive to participate in the preparation of a joint report.

through (g), state that when a minor appears to come within the description of both section 300 (dependency) and section 602 or 602 (delinquency), the county probation department and child welfare agency must consult with each other and jointly determine which status will best serve the interests of the minor and the protection of society. Based on this joint assessment, the juvenile court decides whether the child should be treated as a dependent child or a delinquent ward. [Citations.]" (*In re W.B., supra*, 55 Cal.4th at p. 46.)

In *In re W.B.*, the California Supreme Court explained that our state Legislature added section 241.1 in response to *In re Donald S.* (1988) 206 Cal.App.3d 134, a case that outlined potential problems with allowing concurrent delinquency and dependency jurisdiction over a minor. (*In re W.B., supra*, 55 Cal.4th at p. 46.)

Minor was not a dependent in California. Section 241.1 does not apply because our state Legislature cannot direct the child welfare services department in Maricopa County, Arizona, to prepare a joint report with the probation department in Los Angeles County. Plainly, the statute is meant to govern the county agencies of this state only. (See § 241.1, subd. (c).) Also, the potential problems identified in *In re Donald S.* are not present in this case. The juvenile court did not declare minor to be a ward of the court. Instead, it placed her on probation, without the supervision of the probation department, suggesting that minor should follow the instructions of her social worker in Arizona, and ordered her returned to Arizona pursuant to The Interstate Compact on Juveniles. Thus, there was no danger of duplicative services being provided to minor or that she would be subjected to conflicting orders. (See *D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1123-1124.)

No section 241.1 report was required in this case, however even assuming a joint report was required, minor's argument also fails for several reasons. Initially, minor has forfeited her claim of error by her failure to object. (See, e.g., *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.)

Moreover, minor's argument fails on its merits. The record in this case amply reflects that the Los Angeles probation department conferred with child welfare services

in Maricopa County, Arizona, regarding the relevant circumstances and, ultimately, the best interests of the minor. Indeed the probation department submitted a section 1400 petition to the juvenile court which indicated that minor was a runaway who was being sought by Maricopa County child services. Minor, who signed the voluntary return consent form was then ordered by the juvenile court to be returned to Arizona as it was in her best interest to be near her mother. We conclude that the juvenile court correctly exercised its jurisdiction.

## II. Human trafficking

Minor contends that the juvenile court erred in denying her motion to exclude evidence, and in finding she failed to meet her burden to show that she was a victim of human trafficking.

Evidence Code section 1161, subdivision (a) provides: "Evidence that a victim of human trafficking, as defined in Section 236.1 of the Penal Code, has engaged in any commercial sexual act as a result of being a victim of human trafficking is inadmissible to prove the victim's criminal liability for the commercial sexual act."

As relevant here, Penal Code section 236.1 defines human trafficking as depriving or violating the personal liberty of another, or causing, inducing, or persuading, or attempting to cause, induce, or persuade, a minor to engage in a commercial sex act, with the intent to effect or maintain a violation of Penal Code section 266i, among others, pandering with a minor.

Neither party has provided additional authority elaborating on the type of evidence required or the standard of review. Respondent contends that the provision is inapplicable here, where minor did not seek to exclude evidence of a criminal sex act, but merely the solicitation of a sex act. Liberally construing the statute to promote its purpose of protecting victims of human trafficking, the juvenile court held it applicable here. We need not review that ruling as we conclude minor did not meet her burden of proof.

When the existence of a preliminary fact necessary to cause the exclusion of evidence is disputed, the trial court must indicate which party has the burden of

producing evidence and the burden of proof on the issue. (Evid. Code, § 405.) The juvenile court indicated that minor had both burdens, and neither party disputes that ruling. A preliminary fact is generally subject to proof by a preponderance of the evidence. (*People v. Cottone* (2013) 57 Cal.4th 269, 286; see Evid. Code, § 115.)

In reviewing an order or judgment for substantial evidence, we view the evidence in the light most favorable to the prevailing party, and disregard the contrary showing, resolving all conflicts in favor of the respondent. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527 (*I.W.*).) In a case such as this, where minor is not challenging the sufficiency of the evidence to *support* the judgment, but contends that the evidence supported a contrary finding, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Id.* at p. 1528.)

"Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error. [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) Minor has not met her burden. She has simply pointed to her testimony which, if believed by the juvenile court, would have been sufficient to permit the reasonable inference that she was the victim of human trafficking. As the trier of fact, the juvenile court was the exclusive judge of minor's credibility and was entitled to reject her testimony as unworthy of credence, even though it was uncontradicted. (*I.W., supra*, 180 Cal.App.4th at p. 1528.)

Moreover, the juvenile court could reasonably disbelieve that Tootie, if he existed, was a pimp or that minor was controlled by him. Minor had contact information for Tootie but never mentioned him to the police or told them that she had a pimp. She claimed he hit her hard in the face on the day of her arrest, but had no mark. She never tried to escape from him or appeal to his aunt for help. She claimed to not know his real name or the name of the city or neighborhood in which he lived. Finally, she had a cell

phone but never used it to call law enforcement, relatives, or her group home in Arizona. In sum, minor has failed to show that her testimony was "'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*I.W., supra*, 180 Cal.App.4th at p. 1528.)

## DISPOSITION

The judgment of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9