Filed 10/16/20  In re D.M. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.M.,<br><br>        Defendant and Appellant. | A157612<br><br>(Napa County<br>Super. Ct. No. 20193593202) |

D.M., a minor, was adjudged a ward of the juvenile court and placed on probation with various conditions after she admitted one count of felony vandalism.  She contends the court erred when it (1) permitted her case to proceed as a delinquency matter under Welfare and Institutions Code section 602[1] rather than a status offense under section 601; (2) rejected her requests for non-wardship probation or deferred entry of judgment; and (3) conducted proceedings in chambers outside the presence of her and her parents and signed an ex parte search warrant.  None of her contentions have merit.  We affirm.

---

[1] Further statutory citations are to the Welfare and Institutions Code.

# BACKGROUND

The facts of D.M.'s offense are from the probation report. On May 4, 2019, 17-year-old D.M. was "home alone feeling 'bored' and wanted to go to a friend's house. She thought her father had left his car keys at home for her to use but when she looked for them, she could not find them. She texted with her father about getting the keys to the car. When she realized her father was not leaving the funeral he was attending to bring her the keys, she became frustrated and texted stating she was going to 'hotwire' his 'fucking truck.' The minor followed through with attempting to hotwire her father's truck, causing damage." D.M.'s father estimated the damage to the ignition would cost approximately $1,000 to repair.

On May 16, 2019, a detective updated D.M.'s mother on a case in which D.M. was identified as a victim of human trafficking. D.M.'s mother said her daughter had been missing for several days. The detective discovered that D.M. had posted an ad on a Web site called "megapersonals.com" and, posing as a prospective john, arranged to meet her for a "date" at a hotel in San Francisco. D.M. was detained at the hotel that evening and booked into the Napa County Juvenile Justice Center. She smelled of marijuana and admitted using marijuana daily.

D.M.'s mother told the probation officer that D.M. had been trafficking herself since November 2018. "As a result, the minor has failed to come home." The mother tried to get D.M. into counseling, but D.M. left after 10 minutes "because it made her feel bad about herself." Both parents wanted D.M. detained for her own safety "as she is beyond their control." D.M.'s mother expressed concern that D.M. was a flight risk. "[S]he will take her money and fake identification and leave." The mother was "desperate for intervention and services" for her daughter.

2

During her initial days of detention D.M. argued with staff and was disruptive "as she does not believe she belongs in Juvenile Hall."

The Napa County District Attorney filed a petition under section 602 alleging one count of vandalism over $400 and one count of attempted auto theft, both felonies. At the May 21, 2019 detention hearing, D.M. asked for release on home detention subject to GPS monitoring. The prosecutor opposed release. "We think that's in the best interests of the minor and the public. In this case she was in the process of stealing her parents' car to go to San Francisco. She was involved in human trafficking. The parents are present and they indicate they cannot control her. They have concerns over her safety. . . . She is unruly and while in the hall she's having problems."

D.M.'s father confirmed the prosecutor's statements. "The human traffic side of it, she's going to end up dead, raped, beat up. And we can't control her. We think she needs a major, major time out. We love her with all our heart. She has all the support of us, her aunts, uncles, and her brother. . . . [¶] At this point we can't control her. We love her. I would love for her to be at home with us today, but I don't want her to die."

The court found D.M.'s placement in her parents' home would be contrary to her welfare and that reasonable efforts were made to eliminate the need for removal. A readiness conference and contested jurisdictional hearing were set for June 5 and 6, and, "to check in," an uncontested hearing was set for May 29.

On May 29, 2019, D.M., her parents, the probation officer and all counsel were in court for the uncontested hearing. The court, counsel and the probation officer had an unreported chambers discussion. When they returned, the court granted the prosecutor's request to "advise the parents what we talked about" and a discussion was held off the record without

3

objection. The court then informed the prosecutor and defense counsel "that I signed a search warrant related to this matter yesterday just so when you see my name on it with respect to a telephone." Defense counsel responded, "Okay." The court said, "Okay. No reason why I can't be fair and impartial."

D.M.'s attorney advised the court that the parties had reached an agreement for D.M. to admit the vandalism charge (count 1) in exchange for dismissal of auto theft (count 2). Following advisements, D.M. admitted to felony vandalism. The court dismissed count 2, found that D.M. came within section 602, and set a disposition hearing for June 12.

On June 10, 2019, the probation officer filed a disposition and a section 790 report.[2] D.M. had been involved in human trafficking for approximately one year. She said she sought opportunities to traffic herself because she was attracted to the "fast money" and did not view what she was doing as prostitution. She was upset when she was booked into juvenile hall because she felt her independence was being taken away "as she has been successful up to this point in living two separate lives." She would anger quickly when she did not get her way, "and will demonstrate that anger by yelling profanities and refusing to cooperate with whatever is being asked of her." However, her attitude and participation in programming and groups had improved.

The probation department reported that D.M. was at a high risk of reoffense and ineligible for probation under section 654.2 or 725, subdivision (a), because her offense was a felony. Her high-risk behavior made her unsuitable for deferred entry of judgment under section 790 because she could not be detained for probation violations on the program,

_____

[2] The report is titled "WIC 654.2 Evaluation Report," but the probation officer explained at the hearing that "it was a dispo and 790 report."

4

"which is necessary in supporting her physical safety should she continue to be placed, or place herself, in these dangerous situations."  Probation recommended formal supervision with GPS monitoring, electronic search and other conditions.

The disposition hearing was held on June 12, 2019.  D.M. asked the court to reduce the vandalism offense from a felony to a misdemeanor and grant deferred entry of judgment. The prosecutor argued there were no mitigating factors to support the request to reduce the offense and suggested D.M. could earn the reduction through good behavior in the coming months. The probation officer advised against deferred entry of judgment because only with formal probation could the court impose the intensive probation supervision D.M. required.

The court summarized a "brief conversation in chambers prior to this hearing at which [the probation officer] disclosed to the Court and counsel that there was an incident at Juvenile Hall" that involved D.M. passing a note that led to a fight.  The incident did not change the probation department's recommendation.

The court denied D.M.'s request to reduce the felony to a misdemeanor, agreed to revisit the issue in six months, and denied the request for non-wardship probation.  "Based upon not just the allegations of the damage to the car but the other circumstances that are set forth in the report . . . , I think it's very important for Probation to have all the tools at its disposal to help [D.M.].  The Court is concerned with 725 Diversion, if it were to reduce the felony to a misdemeanor now, because I don't believe that's a long enough time.  As you know, the purpose of the juvenile program is to keep minors safe and to rehabilitate them, and I think we really need the time to do that again, and all the tools."  The court also denied the request for delayed entry

of judgment.  D.M. was declared a ward of the court and placed on formal juvenile probation.

This appeal is timely.[3]

## DISCUSSION

### I.   *D.M. forfeited her claim the case should have proceeded under section 601.*

D.M. contends the prosecutor engaged in misconduct by filing a petition under section 602 rather than section 601, and that the juvenile court erred by permitting the matter to proceed as a delinquency case under section 602. These contentions are unavailing.

*In re W.B.* (2012) 55 Cal.4th 30, 42, explains the relevant difference between delinquency petitions based upon section 601 and section 602:  "In California, the juvenile court's jurisdiction over a minor can be invoked . . . by a delinquency petition, which accuses the child of either disobedience or truancy (§ 601) or the violation of a law that defines a crime (§ 602). . . . [¶] Allegations that a minor refuses to obey orders of a parent or guardian, is beyond parental control, violates age-based curfew ordinances, or is truant or disobedient in school, must be brought in a petition filed under section 601. [Citation.]  These allegations . . . are commonly called 'status offenses' because they address conduct that is not criminal but is nevertheless subject to punishment because of the offender's status as a person under age 18. [Citations.]  Strictly speaking, '[a]n adjudication under section 601 neither requires nor implies a finding of "delinquency." ' "

---

[3] On April 10, 2020, this court denied D.M.'s motion to consolidate this appeal with a second appeal arising from the same proceedings, No. A159362. Her accompanying request that the court addressing the second appeal take judicial notice of the entire record in the first appeal will be decided in case No. A159362.

On the other hand, "[s]ection 602 confers broad juvenile court jurisdiction over allegations that the minor's conduct 'violates any law.' " It extends to offenses that, like purchasing tobacco products or underage drinking, can only be committed by a minor, as well as acts that would be criminal if committed by an adult. (*In re W.B.*, *supra*, 55 Cal.4th at pp. 42–43.) "However, in juvenile court, a minor is not designated as a 'defendant,' nor accused of a 'crime,' even though the allegation would describe a crime in adult court. [Citation.] The determination whether a minor has violated a criminal provision is made solely in order to establish that the juvenile court has jurisdiction. Once this determination is made, the juvenile court can declare the minor a ward of the court and order a disposition that will address the minor's behavior." (*Id.* at p. 43.)

D.M. argues, in essence, that "the juvenile court sat passively by" while the prosecutor improperly colluded with her parents to charge her under section 602 with two "pretextual" felonies "in order to justify incarceration intended as a substitute for effective parental control." The claim is not properly before us because D.M. failed to raise it before the juvenile court. " 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' " (*Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670.) Contrary to D.M.'s suggestion, her request for deferred entry of judgment during the disposition phase of the proceedings is no substitute for a timely objection or demurrer addressed to the decision to charge her under section 602.

In any event, the claim is meritless. The section 602 petition was authorized because D.M. was charged with two felonies, one of which she admitted. Nothing in our review of the record substantiates her claim that the prosecutor, with or without her parents' collusion, filed the felony charges

7

as a pretext to punish her for trafficking herself in order to end-run around the Legislature's exclusion of juveniles from our statutes criminalizing prostitution.  Nor does the record back up her claim that the prosecutor "used" her parents or misled them to believe he was their personal attorney. Finally, D.M.'s assertion of ineffective assistance of counsel in this regard fails with her claim of error.  She can show neither that competent counsel would have objected to proceeding under section 602 nor that such an objection would have prevailed.  (See *Strickland v. Washington* (1984) 466 U.S. 668, 687–688.)

## II.  *Denial of Requests for Non-wardship Probation and Deferred Entry of Judgment*

D.M. next contends the juvenile court erred when it denied her requests to impose non-wardship probation under section 725 or deferred entry of judgment under section 790.  These contentions also lack merit.

With specified exceptions, section 725, subdivision (a) allows the court to place a truant or delinquent minor on informal probation for up to six months without adjudging him or her a ward of the court.[4]  Section 654.3 lists the circumstances of ineligibility for non-wardship supervision, including "[t]he minor is alleged to have committed a felony offense when the minor was at least 14 years of age."  (§ 654.3, subd. (h); see § 725, subd. (a).)  D.M. acknowledged that she committed a felony, and her request to reduce it to a

---

[4] It provides:  "If the court has found that the minor is a person described by Section 601 or 602, by reason of the commission of an offense other than any of the offenses set forth in Section 654.3, it may, without adjudging the minor a ward of the court, place the minor on probation, under the supervision of the probation officer, for a period not to exceed six months. The minor's probation shall include the conditions required in Section 729.2 except in any case in which the court makes a finding and states on the record its reasons that any of those conditions would be inappropriate." (§ 725, subd. (a).)

8

misdemeanor was denied, a ruling D.M. does not challenge on appeal. She was therefore ineligible for non-wardship probation under section 725, subdivision (a).

D.M.'s assertion the court erred when it denied her request for deferred entry of judgment is also meritless. "The DEJ provisions of section 790 et seq. . . . provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed." (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558 (*Martha C.*).)

Here, it is undisputed that D.M. was eligible under the statutory requirements for deferred entry of judgment. But eligibility does not determine suitability. Once eligibility is established, the court must make an independent determination of the minor's suitability after consideration of the factors specified in section 791, subdivision (b), "with the exercise of discretion based upon the standard of whether the minor will derive benefit from 'education, treatment, and rehabilitation' rather than a more restrictive commitment." (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607; *Martha C.*, *supra*, 108 Cal.App.4th at p. 562.) Suitability factors include the minor's age, maturity, educational background, family relationships, motivation, any treatment history, and any other factors relevant to the determination of whether the minor is a person who would be benefited by education,

9

treatment, or rehabilitation.  (§ 791, subd. (b); *In re Sergio R.*, at p. 607.)  We review the denial of deferred entry of judgment for abuse of discretion.  (*Ibid.*)

There was no abuse of discretion here.  D.M. was a victim of human trafficking "and appears to be deeply imbedded in that lifestyle."  Probation reported she was "entrenched in trafficking behavior and substance use without concern for her own safety placing her at significant risk."  She was attracted to the "fast money," which she used for drugs and rent in San Francisco; felt she had control over her situation; and did not plan to stop her dangerous behaviors.

Further, "the underlying issues surrounding [D.M.'s] admitted anger, defiance and substance use is [*sic*] alarming.  Information revealed within this investigation indicate [*sic*] the minor has demonstrated an increase in defiant and disrespectful behavior at home.  Her parents' attempts to redirect and establish boundaries have had little effect in motivating behavior change for the minor.  Despite her parents' intervention, the minor has increased her use of marijuana and the unsafe behavior of leaving her parents' home without their permission for days at a time.  In addition, her defiance and runaway behavior led her mother to conclude she had another place to live and ultimately found out the minor was renting and staying at an apartment in San Francisco when she left the family home."

D.M.'s behaviors, attitude and drug use placed her at high risk of reoffense, but on deferred entry of judgment the probation department would be powerless to detain her if she violated probation and "continue[d] to be placed, or place herself, in those dangerous situations."  The probation officer therefore advised against deferred entry of judgment.

In sum, all indications were that without the structure afforded by probation following entry of judgment, it was highly likely that D.M. would

continue to defy her parents and return to the trafficking and drug use that threatened to derail any chance she had for rehabilitation. It was well within the court's discretion on this record to find she was unamenable to education, treatment, or rehabilitation without the full coercive authority available under formal wardship. (See *Martha C.*, *supra*, 108 Cal.App.4th at p. 562.) To the extent D.M. asserts the court failed to appropriately consider the suitability factors or make express findings on them at the hearing (see § 791, subd. (b)), she is mistaken. The suitability factors were addressed in the probation report; nothing in the record suggests the court disregarded them; and neither the statute nor case law requires the juvenile court to make express findings on a minor's unsuitability for deferred entry of judgment.

## III. *Chambers Conferences and Ex Parte Warrant Application*

Finally, D.M. argues reversal is required because there was no court reporter present for the two chambers conferences or the ex parte search warrant application the court disclosed to counsel and, although D.M.'s attorney was present at the chambers conferences, she and her parents were not. In her view, as a matter of constitutional law "[e]ach record of a juvenile delinquency case should . . . be complete, gavel to gavel."

These claims are also forfeited by D.M.'s failure to assert them before the juvenile court. "A constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.) D.M. failed to object to the juvenile court procedures she now asserts violated her rights, and the record reveals no compelling reason for this court to address them despite the resulting forfeiture.

### DISPOSITION

The judgment is affirmed.

11

_____
Siggins, P. J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


A157612/*People v. D.M.*

12