Filed 3/17/21  In re Levi H. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re LEVI H., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>JENNIFER P.,<br><br>        Defendant and Appellant. | F082115<br><br>(Super. Ct. No. JD138759-00)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Marcos R. Camacho, Judge.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Levy, Acting P.J., Franson, J. and Meehan, J.

Jennifer P. (mother) appeals from the October 27, 2020, Welfare and Institutions Code section 366.26[1] order terminating her parental rights to her child, Levi H., now age two. Mother's only contention on appeal is that the juvenile court did not comply with the inquiry requirements of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) as to Levi's biological father, Mario H. Respondent concedes the issue. We agree and remand for the limited purpose of proper ICWA inquiry.

## STATEMENT OF THE CASE AND FACTS

Levi is mother's youngest child. Mother has two older children, half siblings to Levi and not subjects of this appeal. The older children were living with their father and/or father's family.

In July 2018, the Kern County Department of Human Services (department) received a referral that mother tested positive for amphetamine at the time of Levi's birth; Levi's drug screen was pending. Mother identified Mario H. as Levi's father, but stated she did not live with him.

Mother admitted a longstanding substance abuse issue and admitted using methamphetamine the day after Levi was born and smoking methamphetamine at least three times during her pregnancy. Levi was taken into protective custody.

_Section 300 Petition_

A section 300 petition was filed at the end of July 2018, alleging mother "ate" methamphetamine in the hospital with Levi present. It also alleged that she left the newborn with maternal grandmother, who was blind, and that mother took the child outside in the extreme heat and left him in the care of an eight-year-old. The petition alleged serious risk of harm to Levi due to mother's substance abuse issues. Mother had

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

previously tested positive at the birth of one of her older children. The petition further alleged mother had a criminal history of convictions for being under the influence.

*Detention*

At the detention hearing July 31, 2018, Levi was detained from mother and she was granted supervised visits. The juvenile court found the whereabouts of Mario H. was unknown. Mother filed a declaration under the ICWA, stating she had no known Indian ancestry. The juvenile court found the ICWA did not apply. A jurisdiction and disposition hearing was set for September 11, 2018.

*Jurisdiction and Disposition*

The report prepared in anticipation of the jurisdiction and disposition hearing stated that mother's two older children were back in her care as of the middle of August 2018 after staying with a friend of mother's. Mario H. was contacted by the department, but declined paternity testing, stating he was not Levi's father.

Mother's two voluntary drug tests in August 2018 were positive for amphetamine and methamphetamine.

At the jurisdiction and disposition hearing held September 11, 2018, Mario H.'s paternity statement stated he did not wish to participate in the proceedings and did not wish his status elevated to presumed father. The juvenile court found Mario H. was not Levi's father and dismissed him from the petition.

The juvenile court sustained the petition, declared Levi a dependent of the juvenile court, and removed him from mother's custody. Reunification services were ordered for mother. A six-month review hearing was set for March 11, 2019.

*Six-Month Review Hearing*

At the March 11, 2019, review hearing, the department recommended Levi be placed back with mother and maintenance services ordered. At the time, mother was residing with her two older children and her boyfriend, Edward S. Mother had consistently visited Levi, the visits had gone well, and unsupervised visits approved.

Mother was complying with her court-ordered plan. Levi was returned to mother's custody. A review hearing was scheduled for September 11, 2019.

*Section 387 Petition*

On September 13, 2019, the department filed a section 387 supplemental petition as to Levi, alleging that mother tested positive for methamphetamine in May of 2019 and admitted taking non-prescribed Norco and smoking methamphetamine in September 2019 outside the home, while the children were inside. Mother told the social worker that she was willing to go to in-patient treatment. All three children were placed into protective custody.

On September 23, 2019, the juvenile court detained the children from mother, who was granted supervised visits. At the November 13, 2019 jurisdiction hearing, mother submitted on the petition and the section 387 petition was found true.

*Trailed Review Hearing/Section 387 Disposition Hearing*

At the trailed review hearing and the section 387 disposition hearing held February 26, 2020, the department, which had originally recommended Levi be placed with mother and jurisdiction terminated, changed its recommendation to termination of reunification services and asked that a section 366.26 hearing be set. Mother had tested positive for amphetamine or methamphetamine in December of 2019 and January of 2020.

Mother was not present at the February 26, 2020, hearing. The juvenile court found the section 387 petition true and declared Levi a dependent child. A section 366.26 hearing was set for June 25, 2020.

*Section 388 Petition*

On June 19, 2020, mother filed a section 388 petition, requesting Levi be returned to her physical custody with reunification services. A hearing was set for August 20, 2020.

Mother filed a second section 388 petition on July 1, 2020, with the same requests as the initial petition.

*Section 366.26 Hearing*

The department recommended a permanent plan of adoption for Levi and his half siblings. All three siblings had been together in the caregivers' home, and the department alleged it was in Levi's best interests to be adopted by the current caregivers so he could continue his relationship with his half siblings.

Mother was present at the June 25, 2020, hearing, as was Mario H., who had been dismissed from the earlier petition. Mario H. was appointed counsel and, after discussion, was found to be Levi's biological father. The hearing was continued to August 20, 2020.

*Further Section 366.26 Hearing and Section 388 Petition*

Neither mother nor Mario H. were present at the continued hearing held August 20, 2020. Mother's counsel reported that two of the three children had tested positive for Covid-19, with mother having had a recent visit with them. A continuance was granted for the section 388 and contested section 366.26 hearings, now scheduled for October 27, 2020.

Neither mother nor Mario H. were present at the hearing held October 27, 2020. At the time, mother's counsel stated that mother was withdrawing her section 388 petition but objected to the section 366.26 recommendations.

The juvenile court found, by clear and convincing evidence that Levi was likely to be adopted. It terminated mother and Mario H.'s parental rights and advised them of their right to appeal.

## DISCUSSION

Mother's only claim on appeal is that the juvenile court's order terminating her parental rights must be reversed because no ICWA inquiry was made of Levi's biological father, Mario H. Respondent concedes the error. We agree and will remand for the limited purpose of compliance with the ICWA.

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8; *In re W.B.* (2012) 55 Cal.4th 30, 47; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1163 [ICWA does not apply to emergency removal and placement of children].) When ICWA applies, a state court may not, for example, make a foster care placement of an Indian child or terminate parental rights to an Indian child unless the court is satisfied "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (25 U.S.C. § 1912(d); Welf. & Inst. Code, § 361.7, subd. (a); see *In re K.B.* (2009) 173 Cal.App.4th 1275, 1288 ["Active efforts required by ICWA are 'timely and affirmative steps ... to remedy problems which might lead to severance of the parent-child relationship.' "].) Prior to placing an Indian child in foster care, the court must also make "a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(e); Welf. & Inst. Code, § 361.7, subd. (c).)

If an Indian child is removed from a foster care home, a subsequent placement must be in accordance with ICWA, unless the child is returned to the parent. (25 U.S.C. § 1916(b); Welf. & Inst. Code, § 224, subd. (b).) The Indian child, the parent, and the Indian child's tribe have the right to intervene in any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child" (25 U.S.C. § 1911(c)), and can petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; Welf. & Inst. Code, § 224, subd. (e)).

Central to the protections ICWA provides is the determination that an Indian child is involved, and federal regulations implementing ICWA require that state courts "ask

each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a).)  For these purposes, an " 'Indian child' " is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe *and* is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal law definition].)

The court must also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  (25 C.F.R. § 23.107(a).)  Under California law, the court and county child welfare department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W., supra,* 1 Cal.5th at p. 9; Cal. Rules of Court, rule 5.481(a)[2].)

The juvenile court must ask the participants in a dependency proceeding upon each party's first appearance "whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)), and "[o]rder the parent ... to complete Parental Notification of Indian Status ([California Judicial Council] form ICWA-020)."  (Rule 5.481(a)(2)(C), italics omitted.)

The record in this case reveals that mother was asked and replied that she did not have any known Indian ancestry.  Based upon mother's in-court statement and her parental notification of Indian status declaration indicating that she and her child have no Indian ancestry and are neither members nor eligible for membership in an Indian tribe, there was no "reason to believe" that Levi was an Indian child based on her parentage. (§ 224.2, subd. (e).)  Therefore, there was no duty to make a "further inquiry" as to her side of the family.

---

**2**    All further references to the rules are to the California Rules of Court unless otherwise stated.

However, the record does not reveal that the court made any explicit findings that it or the department satisfied their duties of inquiry under ICWA or state law with respect to Mario H.  Indeed, it does not appear from our record that the juvenile court or any social worker ever asked Mario H. any questions relevant to determining whether he had any Indian ancestry or if Levi was an Indian child.  Nor was Mario H. directed to fill out a parental notification of Indian status form as required (rule 5.481(a)(2)), and no such form is in our record.

## DISPOSITION

The order terminating parental rights is conditionally affirmed.  The matter is remanded to the juvenile court with directions to comply with the inquiry and notice provision of the ICWA and California law as to Mario H.  If, after conducting further inquiry as required, the juvenile court determines there is no reason to know that Levi is an Indian child, the order terminating parental rights shall remain in effect.  If there is reason to know Levi may be an Indian child, then the juvenile court will order notice to the relevant tribes.  If any tribe determines that Levi is an Indian child, the order terminating parental rights shall be vacated for further proceedings with ICWA, including considering any petition filed to invalidate prior orders.  (25 U.S.C. § 1914; Welf. & Inst. Code, § 224, subd. (e).)

8.