Filed 11/4/22 In re A.D. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>J.D.,<br><br>　　Defendant and Appellant. | G061418<br><br>(Super. Ct. No. 20DP0799)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Daphne Grace Sykes, Judge.  Conditionally reversed and remanded.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen, and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\* \* \*

J.D., the father of three-year old A.D., appeals from the judgment terminating his parental rights which makes A.D. eligible for adoption. J.D. does not challenge the merits of the order; instead, he argues the judgment must be reversed because the juvenile court and Orange County Social Services Agency (SSA), failed to conduct sufficient inquiry into whether A.D. had Native American ancestry, as required by the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). We agree.

SSA concedes the error in failing to comply with ICWA requirements, and further concedes, based on published authority, that the error cannot be deemed harmless. The case must therefore be remanded to the juvenile court with directions that the court and SSA comply with their respective ICWA duties.

## FACTS

A.D. was born in January 2019. In June 2020, SSA sought a warrant to take her into protective custody based on evidence that she had no relationship with J.D., and that her mother had left her in the custody of a paternal relative since mid-2019. That relative, in turn, passed custody of A.D. to unrelated third parties who wished to adopt her.

On July 2, 2020, SSA filed a juvenile dependency petition, alleging that dependency jurisdiction was proper under Welfare and Institutions Code[1] section 300 based on the parents' failure to protect and provide for A.D., and their inability to provide for her based on mental illness, developmental disability, or substance abuse.

_____

[1]     All further statutory references are to this code.

2

The petition alleged the parents initially resided with A.D. in an unsanitary home, but had subsequently left A.D. in the custody of third parties.[2] It alleged that A.D.'s mother vacillated on the issue of relinquishing her parental rights and allowing A.D. to be adopted by her caretakers. The petition further alleged that A.D.'s mother may have unresolved mental health issues, that she engages in self-harming behavior, and that she has a history of hospitalization in a psychiatric facility. The petition also alleged the parents had a history of domestic violence, and that J.D. had unresolved anger management issues.

The detention report indicated A.D.'s mother denied having any Native American heritage, and J.D. had denied any connection during a prior child abuse investigation. The report concluded "[t]he Indian Child Welfare Act does not apply." SSA repeated that conclusion in a subsequent report.

A.D. was formally placed in the custody of the family that had been caring for her. She has remained in their care throughout the dependency.

SSA could not initially locate J.D. and engaged in efforts to find him. When reached by telephone in August 2020, J.D. claimed that A.D.'s mother had been keeping her away from him and had given A.D. away "three or four times," while insisting "I'm not giving up any rights anytime soon."

In September 2020, both parents pleaded no contest to the jurisdictional petition and the court sustained the petition. The court ordered J.D. to participate in substance testing for 60 days and to participate in individual counseling to address his anger management and history of domestic violence. The court allowed J.D. to have supervised visitation as recommended by SSA.

---

[2] In contrast to the custody warrant, the petition alleged it was J.D. who initially left A.D. in the custody of a friend (not a relative) identified only as "Gabe," and it was A.D.'s mother who eventually allowed her to live with the third parties who wished to adopt her.

In November 2020, SSA reported that J.D. had been inconsistent in his visitation and in his communication with SSA. He failed to participate in drug testing. In March 2021, in connection with the six-month hearing, SSA reported that J.D. had not participated in either drug testing or individual counseling services. In April 2021, J.D. had a positive drug test result and then missed his next test. His visitation with A.D. continued to be inconsistent.

SSA attempted to assess the homes of the paternal grandparents and maternal grandmother to determine whether they qualified as a suitable placement for A.D.; SSA was unable to establish suitable placement with either.

In June 2021, the court found a substantial probability that A.D. could return to parental custody within the next six months and continued reunification services for both parents.

During the second reunification period, J.D. continued his pattern of failing to drug test. His therapy referral was terminated for the third time because he had not responded to efforts to initiate services. J.D. signed up for a new referral and was put on a wait list. J.D.'s visitation remained inconsistent. Between July 16 and August 24, he did not respond to efforts to arrange visitation.

In August 2021, in connection with the 12-month review hearing, SSA reported, "The Indian Child Welfare Act may or may not apply" without further explanation. The report recommended termination of reunification services.

The 12-month review hearing was continued until November 2021; by that time SSA had changed its recommendation to continue reunification services until an 18-month review hearing. The court adopted SSA's recommendation.

In connection with the 18-month review hearing, SSA reported that "[t]hroughout this period of supervision, the father seldomly made himself available to [SSA]." J.D. had no visitation with A.D. during the period; his cooperation with his case plan and his effort to alleviate the causes for court involvement were described as

4

"None." Once again, SSA reported that "The Indian Child Welfare Act may or may not apply."

Neither parent appeared at the 18-month review hearing. SSA asked the court to make an ICWA finding; the court subsequently stated it had ICWA-020 forms from both parents and was finding ICWA did not apply to A.D.'s case. The court then ordered termination of the parents' reunification services and scheduled the case for a contested hearing under section 366.26.

The court held that hearing in May 2022. Neither parent was present, but the mother's counsel stated she had been authorized to submit the matter on the reports. Counsel explained that her client understood A.D. was well-cared for in the home she had been in since before the dependency was initiated, and hoped she could continue "some sort of relationship" with A.D. going forward.

J.D.'s counsel reported that she had not been in contact with him since the 12-month review hearing. She objected to the termination of J.D.'s parental rights "for the record" because she was "sure that my client would not want his parental rights terminated."

The court found there was clear and convincing evidence that A.D. was adoptable, terminated parental rights, and ordered a permanent plan of adoption.

## DISCUSSION

"ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. [Citations.] Congress enacted ICWA to further the federal policy '"that, where possible, an Indian child should remain in the Indian community . . . ."'" (*In re W.B.* (2012) 55 Cal.4th 30, 48.)

ICWA provides that "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party

5

seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) As explained by our Supreme Court, "[t]his notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding. No foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe receives the required notice." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 5 (*Isaiah W.*).)

In furtherance of ICWA, California law places "an affirmative and continuing duty" on both the court and the child welfare agency—in this case SSA—"to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); *In re Isaiah W., supra,* 1 Cal.5th at p. 9 [§ 224.2 "codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [federal Bureau of Indian Affairs]"].)

If a child is taken into SSA custody, the duty to inquire about Indian status (i.e., "whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled") extends not only to "the child [and] parents," but also to "the legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect." (§ 224.2, subd. (b).)

"At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

In this case, J.D. argues SSA erred by limiting its inquiry about A.D.'s potential Indian heritage to her parents and failing to inquire of her extended family members on both sides. He further contends the court erred by failing to directly inquire of each parent in court, and to advise them as required by statute. We agree.

SSA concedes the error in failing to extend its inquiry to other family members and interested parties. Based on our prior published cases, *In re E.V.* (2022) 80 Cal.App.5th 691, 697-698 (*In re E.V.*), and *In re A.R.* (2022) 77 Cal.App.5th 197, 206 (*In re A.R.*), SSA concedes that a remand is required to address the error.

SSA nonetheless argues that the disposition of this appeal should be a conditional *affirmance* of the judgment terminating parental rights, with a remand to the juvenile court with instructions "to comply with the inquiry and notice provisions of ICWA and California law," rather than the conditional *reversal* we ordered in both *In re E.V.* and *In re A.R.* SSA cites *In re Antonio R.* (2022) 76 Cal.App.5th 421, 436, as authority for the conditional affirmance disposition in this situation, but the case does not explain how a disposition "affirming" a judgment could result in a transfer of jurisdiction back to the juvenile court. Nor does SSA explain why a conditional affirmance would be advantageous in any other way. We will consequently adhere to the language of our prior dispositions.

## DISPOSITON

The judgment is conditionally reversed, and the case is remanded with instructions—to both SSA and the juvenile court—to conduct a full initial ICWA inquiry as soon as possible. If that inquiry reveals evidence of Native American heritage, then

the additional ICWA requirements must be complied with.  If it does not, then the judgment shall be reinstated forthwith.


                                    GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.