Filed 11/13/24  In re A.P. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E084041 |
| Plaintiff and Respondent, | (Super. Ct. No. RIJ1700224) |
| v. | OPINION |
| A.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Conditionally reversed and remanded with directions.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant M.T.

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Julie K. Jarvi, Deputy County Counsels, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant and appellant, A.V. (Mother) appeals from the juvenile court's order terminating parental rights as to her five-year-old daughter A.P. (Welf. & Inst. Code,[1] § 366.26). Mother contends that the juvenile court and plaintiff and respondent, the Riverside County Department of Public Social Services (DPSS), failed to comply with the duty of inquiry under the Indian Child Welfare Act of 1978 (ICWA)[2] (25 U.S.C. § 1901 et seq.) and related state law.[3] For the reasons set forth *post*, we conditionally reverse and remand this matter to the juvenile court.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *General Background*

Mother has a prior history with child protective services involving two of her other children due to issues with general neglect, homelessness, substance abuse, and domestic violence in the home. Prior to this case, Mother received reunification services from May 2017 to June 2018 as to her two older children. Mother failed to reunify with the children

---

[1] All future statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1), overruled on other grounds in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18. (*Dezi C.*).)

[3] C.P. (Father) is not a party to this appeal.

resulting in her parental rights being terminated and a permanent plan of adoption being implemented for the children.[4] Mother's two older children were adopted in 2019.

Mother again came to the attention of DPSS in December 2021, after a 10-day referral was received by DPSS as to then three-year-old A.P. for general neglect. It was reported that the parents were arguing and Mother chased Father in her car while he had A.P. in his car. Father refused to return the child to Mother, and both parents called law enforcement. Father was homeless and slept in his car with A.P., and the parents kept the child out on the street at all hours. The parents had a history of methamphetamine use and it was suspected that they were using again.

When the social worker met with Mother, she reported that she lived with the maternal grandfather and A.P. Mother also stated that the maternal grandmother had filed a restraining order against her. Mother submitted drug tests and tested positive for marijuana, codeine, amphetamine, and methamphetamine.

Following an investigation, DPSS attempted to serve the protective custody warrant on March 3, 2022. However, Mother and A.P. were no longer residing at the maternal grandfather's residence. The social worker left multiple voicemails explaining to Mother that she needed to work with DPSS. On March 9, 2022, Mother left an emotional call to the social worker agreeing to bring A.P. to the social worker's office.

---

[4] Mother appealed the order terminating parental rights as to her two older children before this court in 2018, case No. E071486. The sole issue Mother raised in that appeal was a lack of compliance with ICWA (25 U.S.C. § 1901 et seq.) and related California law. (See *In re G.C.* (Mar. 12, 2019, E071486) [nonpub. opn.].) We take judicial notice of our prior nonpublished opinion in case No. E071486.

After Mother brought A.P. to DPSS that same day, A.P. was placed with her paternal aunt, Y.P. The social worker spoke with the maternal grandfather, Y.P., and the maternal grandmother for consideration of relative placement of A.P. in March 2022.

On March 9, 2022, a petition was filed on behalf of the child pursuant to section 300, subdivision (b) (failure to protect) based on the parents' extensive history of engaging in domestic violence in the child's presence, the parents' unresolved substance abuse history, Mother's history with DPSS, the parent's criminal history, and Father's transient lifestyle. A first amended petition was filed on April 12, 2022, amending two of the allegations.

The detention hearing was held on March 10, 2022. At that time, the juvenile court recalled and quashed the protective custody warrant and formally detained the child from parental custody. The court stated: "The child is already detained. Temporary care and placement is vested with DPSS pending any further hearing or further order of the Court. [¶] I'm not inclined to make a finding as to (c)2 regarding flight since the mother did comply and return[ed] the child over to DPSS." After DPSS's counsel noted that DPSS had obtained a warrant on March 3, 2022 and that they had attempted to serve the warrant for four days, the juvenile court responded: "I did see that. She ultimately did comply, so I'm not going to make that finding. The child is ordered detained. Temporary care and placement is vested with DPSS pending further hearing or further order of the Court."

4

Mother reported that she was homeless, living in her car, and attempting to get into a sober living home. She reported that her support system included the maternal grandfather, her siblings, her "'ex-step mom,'" a sponsor, and a friend. Referring to her childhood, Mother noted that she was raised by the maternal grandmother and "one of her step dads." She also stated that she had half-siblings—one sister and two brothers.

The juvenile court took jurisdiction of the instant matter on April 12, 2022. The court found true the allegations in the first amended petition, declared the child a dependent of the court, and provided the parents with reunification services. The child remained placed with paternal aunt Y.P.

Mother's services were continued at the April 14, 2023, 12-month review hearing, but Father's services were terminated. The child was maintained with paternal aunt Y.P. Mother continued to struggle with her sobriety and failed to benefit from the services she received. She tested positive for methamphetamines and amphetamines six days after she completed her in-patient drug treatment program. Mother's reunification services were terminated on September 11, 2023, at the 18-month review hearing, and a section 366.26 hearing was set to establish a permanent plan for A.P.

A.P. remained placed with paternal aunt Y.P. She was attached to paternal aunt Y.P. and referred to her as "'mom.'" Paternal aunt Y.P. was the prospective adoptive parent, and A.P. stated that she wanted to remain with her.

Mother filed a section 388 petition on January 19, 2024, requesting reunification services. The petition was denied.

The section 366.26 hearing was held on May 7, 2024. The juvenile court found the child to be adoptable and terminated parental rights. Mother timely appealed.

B. *ICWA Background*

ICWA was found not to apply in Mother's prior dependency case involving her two older children. (See *In re G.C.*, *supra*, E071486.) In this case, Mother denied having any Native American ancestry orally when inquired by the social worker and in her ICWA-020 Parental Notification of Indian Status form (ICWA-020). Mother's counsel also represented to the juvenile court at the detention hearing that Mother had no Native American ancestry. Father also denied Indian ancestry in his ICWA-020 form, and his counsel represented to the juvenile court at the detention hearing that Father had no Native American heritage. The juvenile court found that DPSS had conducted a sufficient inquiry regarding whether the child may have Indian ancestry and that ICWA did not apply to the proceedings.

Throughout this dependency proceedings, DPSS continued to inquire of the parents and their relatives concerning whether A.P. had Native American ancestry. Mother and Father repeatedly denied having any Native American ancestry or tribal affiliation and reported no known new information regarding Native American ancestry or tribal affiliation for the child and their family. And the juvenile continued to find DPSS had conducted a sufficient ICWA inquiry, that ICWA did not apply to the proceedings, and that A.P. was not an Indian child.

6

On June 9, 2022, paternal aunt Y.P. denied A.P. had Native American lineage. She again denied having Native American ancestry or tribal affiliation on January 30, 2023.

At the 12-month review hearing on October 12, 2022, the juvenile court personally inquired of the parents whether they had Native American ancestry. Father and Mother both denied having any such ancestry. The court also inquired of the maternal grandfather who was present at the hearing. The maternal grandfather stated "no" when the court asked him whether he was aware of having any Native American ancestry in his family. The court found that proper and adequate further inquiry and due diligence as required by ICWA had been conducted and that there was no reason to know whether the child is an Indian child.

At the March 29, 2023, hearing, the maternal grandfather and paternal aunts Y.P. and H.C. were present in court. The juvenile court personally conducted an inquiry of Mother, the maternal grandfather, paternal aunt Y.P., and paternal aunt H.C. They all responded that they were not aware of having any Native American ancestry in their families.

The parents, the maternal grandfather, and paternal aunts Y.P. and H.C. were present at the hearing on April 12, 2023. The juvenile court asked Mother, Father, and the two paternal aunts if they were aware of any Native American ancestry in the family. All denied being aware of having such ancestry.

On August 28, 2023, the juvenile court again personally asked both parents whether they knew or had reason to know the child was an Indian child. Both parents stated that they had no reason to believe A.P. had any Native American ancestry in her background. They also stated that they had no Native American ancestry. The court found a sufficient ICWA inquiry had been made and that there was no new information to indicate ICWA may now apply.

At the September 11, 2023, 18-month review hearing, the juvenile court inquired of Mother, paternal aunts Y.P. and H.C., and Father whether they were aware of any Native American ancestry in their backgrounds, and they all responded that they were not aware of any such heritage. The juvenile court found that a proper, adequate and sufficient further ICWA inquiry and due diligence had been conducted, that there was no reason to know A.P. was an Indian child, and that ICWA did not apply.

On January 22, 2024, the juvenile court again asked Father and paternal aunts Y.P. and H.C. if they were aware of, or had reason to believe, they had any Native American ancestry. They all responded in the negative. The court found that a sufficient ICWA inquiry had been made and that there was no new information to indicate ICWA may now apply.

On April 22, 2024, the juvenile court asked Mother, Father, and paternal aunts H.C. and Y.P. if they were aware of, or had reason to believe, they had any Native American ancestry. They all responded in the negative again.

8

Once again, at the May 7, 2024, contested section 366.26 hearing, the juvenile court inquired of Mother, Father, and paternal aunts Y.P. and H.C. if they were aware of any Native American ancestry in their background. They all responded that they were not aware of any such ancestry.

III.

DISCUSSION

Mother challenges the order terminating parental rights on the grounds that the juvenile court and DPSS failed to comply with the inquiry requirements of ICWA and related California law. Mother specifically asserts that DPSS never inquired with the paternal grandparents, the maternal grandmother, and a maternal half-sister. DPSS responds that there was no statutory duty to inquire of these individuals because A.P. was removed from the home pursuant to a warrant. In the alternative, DPSS asserts that no error occurred in failing to inquire of these relatives.

ICWA is a federal law that gives Indian tribes "concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation." (*In re W.B.* (2012) 55 Cal.4th 30, 48.) The law was enacted to "further the federal policy "'that, where possible, an Indian child should remain in the Indian community.'"" (*Ibid*.) To effectuate this policy, ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), disapproved on other grounds in *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.) California has adopted various procedural and substantive

9

provisions of ICWA. (*In re E.C.* (2022) 85 Cal.App.5th 123, 138.) Consistent with ICWA, California law defines an "Indian child" as "[a]ny unmarried person who is under 18 years of age and is either of the following: [¶] (A) [a] member or citizen of an Indian tribe" or "(B) [e]ligible for membership or citizenship in an Indian tribe and is a biological child of a member or citizen of an Indian tribe." (§ 224.1, subd. (b)(1); 25 U.S.C. § 1903(4).) However, because it is typically not self-evident whether a child is an Indian child within the meaning of ICWA, federal and state law both mandate certain inquiries to be made in each case. (*Ricky R.*, *supra*, at p. 678.)

Under California law implementing ICWA, the juvenile court, and the child protective agency have "an affirmative and continuing duty" to inquire whether a child who is the subject of a dependency proceeding is, or may be, an Indian child. (§ 224.2, subd. (a).) This continuing duty applies in all dependency cases (§ 224.2, subd. (a)) and can be divided into two phases—the initial duty to inquire and the duty of further inquiry. (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678; *In re T.G.* (2020) 58 Cal.App.5th 275, 290.) "If the initial inquiry gives the juvenile court or the [child protective] agency 'reason to believe' that an Indian child is involved, then the juvenile court and the agency have a duty to conduct 'further inquiry' (§ 224.2, subd. (e)(1)), and if the court or the agency has 'reason to know' an Indian child is involved, ICWA notices must be sent to the relevant tribes (§ 224.3, subd. (a); 25 U.S.C. § 1912(a))." (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

Where the child protective agency has complied with its duty of inquiry and there is no reason to know that the child is an Indian child, the court may find that ICWA does not apply. (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) However, before the juvenile court makes such a finding, it must ensure the child protective agency has made an adequate inquiry under ICWA and related California law. (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 566-567.) "A juvenile court's finding that ICWA does not apply implies 'that social workers [have] fulfilled their duty of inquiry.'" (*Id.* at p. 567.) We review the juvenile court's ICWA findings for substantial evidence, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. (*Ibid*; *In re D.F.* (2020) 55 Cal.App.5th 558, 565.) We will uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Dominick D.*, *supra*, at p. 567; *In re D.F.*, *supra*, at p. 565.) Although this is a deferential standard, "'"an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law."'" (*In re K.H.* (2022) 84 Cal.App.5th 566, 602.) The juvenile court "may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from [an] inquiry that is not proper, adequate, or demonstrative of due diligence." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408.)

At issue in this case is the duty of initial inquiry. While this appeal was pending, the Legislature recently enacted Assembly Bill No. 81, which clarified that the duty of

11

initial inquiry, includes but is not limited to, asking the child, the party who reported the abuse or neglect, and each family member with whom the child protective agency has contact, including extended family members, whether the child is or may be an Indian child. (§ 224.2, subd. (b)(1); Stats. 2024, ch. 656, § 3.) Before Assembly Bill No. 81 was enacted, there was a dispute in our court as to whether the duty of initial inquiry applied to extended family members when the child was taken into custody pursuant to a warrant. (See e.g., *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447; *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572; *In re Andres R.* (2023) 94 Cal.App.5th 828, 840-856, review granted Nov. 15, 2023, S282054; *In re D.M.* (2024) 101 Cal.App.5th 1016, review granted July 24, 2024, S285537.) The passage of Assembly Bill No. 81 resolved that dispute. Section 224.2, subdivision (b)(2), now provides that when a child is taken into custody "pursuant to a warrant described in [s]ection 340" the initial inquiry includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).)

Applying the current version of section 224.2, subdivision (b), as amended by Assembly Bill No. 81, we conclude DPSS had a duty to inquire of the paternal grandparents, the maternal half-sister, and the maternal grandmother because they

12

qualified as extended family members. The term "'[e]xtended family member'" is statutorily defined to have "the same meaning as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached 18 years of age and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c)(1).)

DPSS was aware that the paternal grandmother had taken care of A.P. when Father was not available and thus could have obtained her contact information from Father. In addition, A.P.'s caregiver, paternal aunt Y.P., maintained a relationship with both paternal grandparents but she was never asked for their contact information. DPSS was also aware that Mother spoke to her half-sister "a lot" and could have obtained the maternal half-sister's contact information from Mother. Regarding the maternal grandmother, DPSS spoke with her on March 8, 2022, to assess her for placement and visitation but did not inquire as to her Native American ancestry. Relying on our prior nonpublished opinion from Mother's appeal in her two older children's cases, DPSS notes "'On September 21, 2018, the social worker spoke to the maternal grandmother, and she said there was no Indian ancestry on either the maternal or paternal side of the family.'" (*In re G.C.*, *supra*, E071486.) Although that is correct, DPSS should have inquired of the maternal grandmother again as this case involves a different child and the state ICWA statutes have since been amended. DPSS thus did not satisfy its duty of initial inquiry, and, in turn, the juvenile court erroneously found that ICWA did not

13

apply. (§ 224.2, subd. (b); *In re Y.M.* (2022) 82 Cal.App.5th 901, 916; *In re Oscar H.* (2022) 84 Cal.App.5th 933, 937; *Ricky R.*, *supra*, 82 Cal.App.5th at p. 680.)

In *Dezi C.*, *supra*, 16 Cal.5th 1112, our Supreme Court recently resolved a split amongst the Courts of Appeal regarding the proper standard to apply in assessing the prejudicial effect of a child protective agency's failure to comply with its duty of initial inquiry. (*Id*. at pp. 1125, 1134-1135.) The court held "that an inadequate Cal-ICWA inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the agency to conduct an adequate inquiry, supported by record documentation." (*Id*. at p. 1125.) The court explained that "[w]hen a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.] '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.'" (*Id*. at p. 1136.) As a result, "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Id*. at p. 1136.)

Accordingly, until DPSS has completed their duty of initial inquiry by contacting or making a reasonable and diligent effort to contact the paternal grandparents, the maternal grandmother, and the maternal half-sister it is premature to conclude that ICWA

does not apply. Therefore, this case must be conditionally reversed and remanded to the juvenile court for DPSS to conduct an adequate ICWA inquiry.

IV.

DISPOSITION

The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with its duty of initial inquiry under subdivision (b) of section 224.2 and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the proper tribes (25 U.S.C. § 1912(a); § 224.3), and the documentation provisions of the California Rules of Court, rule 5.481(a)(5). If the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

15